UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA      CRIMINAL NO. 6:12-cr-00203

VERSUS      JUDGE HAIK

CATHERINE F. ROMERO      MAGISTRATE JUDGE HANNA

## RULING

Before the Court is the motion, filed by attorneys James E. Boren and Harry
Daniels, III, by which the defendant's counsel seek to withdraw as counsel of record
for Catherine Romero due to a conflict of interest.   (Rec. Doc. 57).   Oral argument
was held on November 25, 2013.   Present in court were Ms. Romero; Ms. Romero's
current counsel James E. Boren and Harry Daniels, III; Carol Whitehurst, an attorney
with the federal public defender's office as stand-by counsel for Ms. Romero; and J.
Luke Walker, counsel for the government.   For the following reasons, the motion is
granted.

## BACKGROUND

Catherine Romero was charged in an indictment (Rec. Docs. 1, 2) with seven
counts of wire fraud under 18 U.S.C. § 1343, five counts of money laundering under
18 U.S.C. § 1957, and a forfeiture count.   The charges grow out of an alleged scheme
to obtain money and property by means of false and fraudulent pretenses,

representations, and promises.  As explained in the indictment, Ms. Romero allegedly represented to potential investors that if they gave her money she would either purchase an alligator farm and alligator hide tanning facility in Opelousas, Louisiana or use the money to acquire land in Scott, Louisiana, on which she planned to build a tannery and manufacturing facility so that various goods could be made from alligator hides.

Initially, Ms. Romero was not detained.  One of the conditions of her pretrial release, however, was that she refrain from receiving any money from any investor with regard to any project or entity in which she had an interest.  When it was determined that she had obtained additional funds from a prior investor, her pretrial release was revoked.  She is currently incarcerated awaiting trial and has retained Mr. Boren and Mr. Daniels to represent her.

On May 22, 2013, an evidentiary hearing was held to determine whether a conflict of interest would be created if Mr. Boren and Mr. Daniels were enrolled as counsel of record for Ms. Romero.  The issue presented at that time concerned the way in which funds were raised to pay a retainer to Mr. Boren and Mr. Daniels.  At that time, the Court recognized the potential conflict of interest but Ms. Romero was permitted to waive the potential conflict, and Mr. Boren and Mr. Daniels were permitted to enroll as Ms. Romero's counsel of record.

The government continues to maintain that the method by which the fee was arranged was a part of a fraudulent scheme or conspiracy to engage in fraudulent conduct by Ms. Romero and a gentleman named James Davis.  The government provided Mr. Boren and Mr. Daniels with tape-recorded telephone calls between Ms. Romero and Mr. Davis which allegedly evidences a pattern of misrepresentations on the part of Ms. Romero and gives rise to a serious potential for conflict if Mr. Boren and Mr. Daniels continue their representation of Ms. Romero.

Additionally, since the evidentiary hearing in May 2013, another significant issue has arisen.  The government advised Mr. Boren and Mr. Daniels that jail house recordings of telephone calls of Ms. Romero is not only evidence of her ongoing business activities but also seems to implicate her attorneys in those activities.  In tape recordings provided by the government to Mr. Boren and Mr. Daniels, Ms. Romero told Corey Mercke that Mr. Mercke should keep the investors calm; that Ms. Romero is continuing to work on her business from jail; and that her attorneys (Mr. Boren and/or Mr. Daniels) visited her in jail, told her to continue working, and told her to keep in touch with her investors; that her "new attorney" (Mr. Boren and/or Mr. Daniels) will be handling her business transactions; and that her "new attorney" (Mr. Boren and/or Mr. Daniels) has already spoken with some of her investors.

The government represented that Mr. Mercke is alleged to be a co-conspirator with Mrs. Romero in a new investigation who is now cooperating.  Mr. Mercke received a target letter from the government in August 2013, and the allegations against him allegedly include wire fraud, conspiracy to obstruct justice, and obstruction of justice by attempting to tamper with a witness.  The government has also advised Mr. Boren and Mr. Daniels that Ms. Romero has made additional telephone calls to persons other than Mr. Mercke in which she has made similar representations concerning the alleged involvement of her attorneys in her alleged ongoing business activities.

The government contends that Ms. Romero's recorded statements constitute evidence of continued criminal activity, and the government intends to introduce this evidence at trial pursuant to F.R.E. 404(b).  Therefore, whether Ms. Romero's representations to Mr. Mercke and others are true will likely be an issue at Ms. Romero's trial.  If Ms. Romero testifies at trial, the government will likely cross-examine Ms. Romero regarding the recorded statements pursuant to F.R.E. 608, which will likely require that Mr. Boren and/or Mr. Daniels be called as witnesses to testify regarding whether Ms. Romero's representations are true or false.

For that reason, Mr. Boren and Mr. Daniels argue that the evidence the government intends to introduce at trial creates the potential for a conflict of interest

between Ms. Romero and her counsel.  In particular, they argue that if they continue representing Ms. Romero, they will likely be faced with a scenario where they would either violate Rule 3.7 of Louisiana's Rules for Professional Conduct, force a mistrial, or have to withdraw at a point where she would suffer hardship. Accordingly, Mr. Boren and Mr. Daniels argue that they are ethically obligated to seek to withdraw as Ms. Romero's counsel.

This motion is not opposed.  At the hearing, the government's counsel stated that he agrees that the statements made by Ms. Romero in the recorded telephone calls create the potential for a conflict of interest because it may require her counsel to become witnesses at her trial.

Although not addressed in the pending motion, the undersigned also notes that even if neither Mr. Boren nor Mr. Daniels is called upon to testify at trial and Ms. Romero is convicted, they might be required to either support or refute Ms. Romero's recorded statements in connection with her sentencing, presenting the serious potential for a conflict of interest.

## ANALYSIS

The Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is

willing to represent the defendant even though he is without funds.[1]  While that right

is absolute, "an accused's right to a *particular* counsel is not."[2]  The right to counsel

includes the "right to representation that is free from any conflict of interest."[3]  "A

conflict exists when defense counsel places himself in a position conducive to divided

loyalties."[4]

The court "must recognize a presumption in favor of [the defendant's] counsel

of choice, but that presumption may be overcome not only by a demonstration of

actual conflict but by a showing of a *serious potential for conflict*."[5]  Therefore, while

Ms. Romero's choice of Mr. Boren and Mr. Daniels as her counsel is given

presumptive weight, the pivotal issue is whether there is an actual conflict or serious

potential for conflict as a result of that representation.

Mr. Boren and Mr. Daniels are licensed to practice law in the State of

Louisiana and, for that reason, they are subject to the Louisiana Rules of Professional

Conduct.  One of those rules states that "[a] lawyer shall not act as advocate at a trial

---

[1]     *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989).

[2]     *United States v. Snyder*, 707 F.2d 139, 145 (5th Cir. 1983).

[3]     *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993).

[4]     *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985).

[5]     *Wheat v. United States*, 486 U.S. 153, 164 (1988); *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007); *United States v. Vasquez*, 995 F.2d 40, 42 (5th Cir. 1993).

in which the lawyer is likely to be a necessary witness unless:  (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."[6]

When Mr. Boren and Mr. Daniels originally sought to be enrolled as Ms. Romero's counsel, the evidence before the Court pertaining to funding of her attorneys' retainer and the discussions/involvement with Mr. Davis was such that Ms. Romero was permitted to waive the potential conflict of interest present at that time. But "[a]n accused's right to waive conflict-free representation is not absolute.  If the conflict is so severe as to render a trial inherently unfair, then the integrity of the judicial system has been undermined, and the accused has been deprived of his right to effective assistance of counsel."[7]  Therefore, a court has the discretion to refuse an individual's right to waive conflict-free counsel.[8]  Indeed, a court has "broad latitude" in deciding whether to refuse such waivers in cases of either actual or potential conflicts.[9]  This is so because the court has "an independent interest in ensuring that

---

[6]     Rule 3.7, Rules of Professional Conduct, Article XVI of the Articles of incorporation of the Louisiana State Bar Association.

[7]     *United States v. Vaquero*, 997 F.2d at 90.

[8]     *United States v. Newell*, 315 F.3d 510, 522 (5th Cir. 2002).

[9]     *Wheat v. United States*, 486 U.S. at 163.

criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."[10]

In this case, Mr. Boren and Mr. Daniels may have information concerning the attempts of Ms. Romero and/or others to raise money, allegedly in support of a fraudulent scheme or a conspiracy to engage in fraudulent conduct, and certainly in connection with Ms. Romero's having a third-party pay her legal fee.  They may also have information concerning the truth or falsity of representations made by Ms. Romero to Mr. Mercke and Mr. Davis concerning her alleged ongoing business activities and the advice and/or involvement of her counsel in those activities during her incarceration.  Therefore, Mr. Boren and Mr. Daniels could be called upon to testify at Ms. Romero's trial or in connection with her sentencing if she is convicted. In either case, a serious potential for conflict exists in which Mr. Boren's and Mr. Daniels's loyalties to themselves, candor to the court, and their client are divided.

This Court finds that given the serious potential that a conflict of interest will arise, the undersigned will not accept a waiver by Ms. Romero of the potential conflict of interest at this juncture.  This Court finds that Ms. Romero is competent to understand the nature of the potential conflict and she voiced her understanding of

---

[10]     *United States v. Sanchez Guerrero*, 546 F.3d 328, 332-33 (5th Cir. 2008); *United States v. Vasquez*, 995 F.2d at 42.

the Court's ruling without objection. After receiving an application for appointment of counsel, the Office of the Federal Public Defender was appointed to represent her.

### CONCLUSION

For the reasons given above,

IT IS ORDERED that the motion to withdraw as counsel of record due to a conflict of interest, which was filed by Mr. Boren and Mr. Daniels, (Rec. Doc. 57) is GRANTED.

Signed at Lafayette, Louisiana on November 26th, 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE